IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| RICKY DUTTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 11-G-1326-M |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Ricky Dutton, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards

were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520 (a)-(f). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether she has a severe impairment;

    (3)    whether her impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform her past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

        In the instant case, the ALJ, Jerry M. Lang, determined the plaintiff met the first two tests, but concluded did not suffer from a listed impairment. The ALJ found the plaintiff unable to perform his past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairment (such as pain, fatigue or mental illness) also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony. Foote, at 1559.

**THE STANDARD WHEN THE CLAIMANT TESTIFIES HE
SUFFERS FROM DISABLING PAIN**

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself</u>. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## DISCUSSION

The plaintiff alleges he is disabled due to disabling pain in his lower back and legs. The medical records contain an MRI that shows spondylosis, bulging discs, and a possible herniated disc (HNP) at L5-S1, which suggested clinical correlation. R. 186. The plaintiff's treating physician, Dr. Duryea, had found a positive SLR,[1] which caused her to order the MRI. This provides the clinical correlation for the presence of a herniated disc at L5-S1. Doctor Duryea treated the plaintiff over a number of years. Her

---

[1] The SLR test is also known as Lasègue's sign: "In sciatica, flexion of the hip is painful when the knee is extended, but painless when the knee is flexed. This distinguishes the disorder from disease of the hip joint." Dorland's Illustrated Medical Dictionary 1525 (28th Edition).

treatment notes document an antalgic gait[2] and the use of a cane. She prescribed Lortab10 for pain (150 tablets per month).

The Commissioner's consultative examiner, Dr. Ismail, also found a positive SLR at 30 degrees and mild spasm in the lumbar paraspinal muscles. R. 289. Doctor Ismail found the plaintiff had a restricted ROM and had difficulty getting up from the exam table. He was also unable to do heel-toe walking and squatting due to decreased ROM in the back. R. 289.

The medical records, therefore, clearly document the presence of a condition that could reasonably cause the plaintiff's pain. The ALJ correctly found the plaintiff had a condition that could reasonably be expected to cause his alleged sympotms. R. 18. However, he refused to credit the plaintiff's reports of disabling pain because they "are not consistent with the objective findings." R. 18. To explain this conclusion, the ALJ asserts that Dr. Duryea "noted mostly normal physical examinations <u>except for some tenderness and an abnormal gait while walking with a cane</u>." R. 19 (emphasis added). While the ALJ refers to it as an "abnormal gait," Dr. Duryea repeatedly noted the presence of an antalgic gait, indicating the plaintiff was in pain. <u>Eg.</u>, R. 350 ("antalgic gait"); 353 ("antalgic gait was observed with cane"); and 358 ("[l]imping was observed with cane."). While Dr. Duryea on occasion noted the lumbar spine "exhibited a normal

---

[2] Antalgic is defined as "counteracting or avoiding pain, as a posture or gait assumed so as to lessen pain." <u>Dorland's Illustrated Medical Dictionary</u> 90 (27th Edition).

appearance," her examinations of the plaintiff's spine were far from normal. She found tenderness on palpation and a positive SLR on April 9, 2007. R. 349. Doctor Duryea's treatment notes also show numerous pain scale ratings indicating the presence of disabling pain. Eg., R. 350 ("10"); R. 353 ("9"); and R. 356 ("8"). The ALJ's attempt to use Dr. Duryea's treatment notes to discredit the plaintiff's pain testimony is unreasonable and not supported by substantial evidence. Doctor Duryea's treatment notes support, rather than contradict the plaintiff's allegations of disabling pain.

The ALJ also cites the consultative evaluation by Dr. Ismail as objective medical evidence inconsistent with the plaintiff's allegations of disabling pain. R. 19. However, Dr. Ismail's findings actually support the plaintiff's allegations. Dr. Ismail noted mild spasm of the lumbar paraspinal muscle, restricted range of motion in the dorsolumbar spine, and difficulty getting up from the exam table. R. 289. He also noted the use of a cane and an inability to do either heel-toe walking or squatting because of limited range of motion in the back. R. 289. Most significantly, he found a positive SLR at 30 degrees. R. 289. Doctor Ismail's examination, therefore, provides support for the plaintiff's allegations of disabling pain. It was unreasonable to find the plaintiff not credible based upon Dr. Ismail's consultative examination. It in fact supports the plaintiff's allegations of disabling pain.

The only other reason given by the ALJ for not crediting the plaintiff was his activities of daily living. R. 19. However, the activities recited by the ALJ do not

provide substantial evidence to support finding the plaintiff's allegations of disabling pain not credible. The recited activities represent isolated and limited activities that are in no way inconsistent with disabling pain. The ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain. The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997). As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity. . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added). It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances. In Easter v. Bowen, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974). What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world. Douglas v. Bowen, 836 F.2d

    392, 396 (8th Cir.1987) (quoting <u>McCoy v. Schweiker</u>, 683 F.2d 1138,
1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989). The <u>Easter</u> court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting <u>Rhines v. Harris</u>, 634 F.2d 1076, 1079 (8th Cir.1980)).

    With correct legal standards in mind, it is clear the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. Therefore, the ALJ failed to satisfy the requirements of <u>Hale</u>. The conclusion of that court is equally appropriate in the instant case. "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." <u>Hale</u>, at 1012.

    The plaintiff testified that he suffers pain at a level of eight out of ten on average. R. 36. Because the ALJ did not properly discredit this testimony, it must be accepted as true. Although the vocational expert in the present case was not asked about the impact of daily pain at a level of eight out of ten, the court takes judicial notice that vocational experts universally testify that pain at that level would prevent all gainful employment. This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993). In such a case the action should be reversed and remanded with instructions that the plaintiff

be awarded the benefits claimed. Id. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 7 December 2011.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.